Filed 11/12/25  P. v. Vines CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082893 |
| v. | (Super.Ct.No. FSB17954) |
| JOSHAWA ALLEN VINES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Brian S. McCarville, Judge.  Affirmed.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Joshawa Allen Vines appeals the denial of his petition for resentencing under Penal Code section 1172.6. The trial court found that Vines was a major participant who acted with reckless indifference to human life. Substantial evidence supports that finding, so we affirm.[1]

## I. BACKGROUND

Over two weeks in 1997, Vines and others committed a series of armed robberies at six convenience stores. At the fifth robbery, an accomplice shot and killed a store clerk.

### A. *First Robbery (Hesperia)*

On September 21, 1997, Vines and three others—Robert Mansfield, Brandon Hill, and Tomas Lechuga—drove to a Hesperia convenience store. Hill and Lechuga went inside and returned to the car. Lechuga went back inside, then Vines and Mansfield entered with guns. They demanded money from the clerk. Before the clerk could put money into a bag, Vines fired four bullets at him, hitting his finger. The group then fled. Vines told the others afterward that he "didn't really know if" the clerk had been hit. During a later police interrogation, Vines admitted to shooting the clerk.

### B. *Second Robbery (Highland 1)*

Three days later, on September 24, Vines, Mansfield, and Lechuga drove to a Highland convenience store. Mansfield told Lechuga to go inside and see how many

---

[1] Undesignated statutory references are to the Penal Code.

2

people there were. Lechuga saw only one person, a clerk, but told Mansfield there were two clerks. Vines said he did not want to go in because there were two clerks, but Mansfield said they were going in anyway. Vines and Mansfield then entered and drew their guns, telling the clerk she had 30 seconds to give them all the money. The clerk panicked and forgot how to open up the register, causing one of the two to cock his gun and hold it to the clerk's head. After the clerk opened the register and handed over the money inside, the group fled.

*C. Third Robbery (Highland 2)*

On September 27, Vines, Mansfield, and Lechuga drove to a second convenience store in Highland. Lechuga went in, spoke briefly with the clerk, then left and told Vines and Mansfield that a female clerk was inside. Vines and Mansfield then entered with guns. Vines was carrying a TEC-9.

Vines and Mansfield saw the clerk and a customer. They ordered the customer to get onto the ground facedown. The clerk saw one with an "Uzi" and the other with a Glock: "The one with the Uzi said, 'You have 30 fucking seconds to give me the money, or I'll blow your head off.'" Vines and Mansfield took the money from the cash register and the customer's wallet before fleeing the scene with Lechuga.[2]

---

[2] When shown the TEC-9 at trial, the clerk identified it as the Uzi she referred to, suggesting Vines made the threat. However, the clerk also testified that the one with the Glock was taller, and a detective testified that Vines is taller than Mansfield. The clerk also testified that she gave the one with the Uzi the cash register drawer, and that person left the store first, and Lechuga testified that Mansfield returned first to the car with "a register tray" before Vines arrived with "[j]ust a gun."

## D. Fourth Robbery (Victorville)

On September 30, Vines and Mansfield entered a Victorville convenience store with guns. According to the clerk, the shorter of the two demanded the money from of the cash registers, and the clerk complied. When the same one demanded money from a second drawer and the clerk responded that there was no way she could open it, he shot at the clerk through the glass before leaving.

## E. Fifth Robbery (Mira Loma)

Shortly after midnight on October 3, Vines, Mansfield, and Abel Ayala entered a convenience store. A customer testified that one was armed with an Uzi, one with a handgun, and one with a shotgun. The one with the shotgun hit the customer in the ribs with the gun. He then told the customer he was going to die, except that if he did what he was told, he could live for another five minutes. When the robbers told the clerk to go to the cash register, he refused. The one with the shotgun then pointed it at the customer's face, telling him to look down the barrel of the gun, and that he wanted to watch his face explode. After the clerk continued refusing to go to the cash register, the one with the Uzi shot the clerk. The other two then also began shooting, although the customer's testimony described only the one with the shotgun as shooting "at the clerk." The clerk suffered three gunshot wounds and died from his injuries. The customer hid in a freezer in the back of the store during the shooting. Following the robbery, Vines told Lechuga that Mansfield shot first, and that he (Vines) "heard the gun go off," so he started shooting as well.

4

*F.  Sixth Robbery (Loma Linda)*

A few hours after the fifth robbery, three armed men robbed a convenience store in Loma Linda.  As they were leaving, one of the men shot at the clerk, missing him by inches.  During his police interrogation, Ayala admitted involvement in this robbery.

*G.  Conviction and Section 1172.6 Petition*

Vines, Mansfield, Lechuga, Hill, and Ayala were charged in connection with the robberies.  Lechuga and Hill testified for the prosecution at trial under plea agreements.  Following a jury trial, in April 1999, Vines was convicted of seven counts of second degree robbery, one count of attempted second degree robbery, two counts of assault with a firearm, and one count of murder, along with several enhancements.  Vines was sentenced to an aggregate term of 63 years, 8 months plus 25 years to life.

In 2020, Vines filed a petition under former section 1170.95 (now section 1172.6).  The trial court issued an order to show cause, and in December 2023, it held an evidentiary hearing on the petition.  Mansfield, who had also been convicted in connection with the robberies, had also filed a similar petition, so the evidentiary hearing was on both petitions.  Through counsel, Vines argued that the prosecution could not prove beyond a reasonable doubt that he was either the actual shooter or a major participant who acted with reckless indifference to human life.  He argued that he was 16 years old at the time of the robberies and the youngest of the defendants, "[s]o it can be reasonably inferred that he was manipulated . . . being directed and instructed by the more sophisticated and older individuals."

5

The trial court found beyond a reasonable doubt that Vines was a major participant who acted with reckless indifference to human life. Regarding Vines's age, the trial court noted: "He certainly was young at the time, but the evidence certainly shows that he was armed and went from place to place, two counties, and was along not just, I'll say, for the ride, but the evidence shows beyond a reasonable doubt, as I've indicated, that he was a major participant and exhibited that reckless indifference." Accordingly, the trial court denied Vines's petition.[3]

## II. DISCUSSION

"Effective January 1, 2019, the Legislature passed [Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015; Senate Bill 1437)] 'to amend the felony murder rule . . . .' (Stats. 2018, ch. 1015, § 1, subd. (f).) In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added [what is now section 1172.6], which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959; see *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2, (*Strong*).)

In relevant part, section 1172.6, subdivision (a) provides that a "person convicted of felony murder . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts" if three conditions apply. First, "[a] complaint, information, or

---

[3] The trial court denied Mansfield's petition as well. We affirmed that denial in *People v. Mansfield*, E083158 (Oct. 15, 2024) 2024 WL 4489429 [nonpub. opn.].

indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder." (§ 1172.6, subd. (a)(1).) Second, "[t]he petitioner was convicted of murder." (§ 1172.6, subd. (a)(2).) Third, "[t]he petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).)

"Penal Code section 189, as amended, now limits liability under a felony-murder theory principally to 'actual killer[s]' [citation] and those who, 'with the intent to kill,' aid or abet 'the actual killer in the commission of murder in the first degree' [citation]. Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2'—that is, the statute defining the felony-murder special circumstance." (*Strong, supra*, 13 Cal.5th at p. 708.)

Where, as here, the petitioner makes the requisite prima facie case showing he is entitled to section 1172.6 relief, the superior court issues an order to show cause and holds an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (See § 1172.6, subds. (c), (d)(1).)

Under section 1172.6, subdivision (d)(3), at the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of

7

evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed . . . .  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."  (§ 1172.6, subd. (d)(3).)

The trial court found that Vines was a major participant who acted with reckless indifference to human life, and on appeal, Vines challenges only the reckless indifference portion of that finding.

"Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'  [Citation.]  Examples include 'the person who tortures another not caring whether the victim lives or dies, or the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property.'  [Citation.]  Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.'"  (*In re Scoggins* (2020) 9 Cal.5th 667, 676-677.)

"Reckless indifference to human life has a subjective and an objective element. [Citation.]  As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.'

8

[Citations.] As to the objective element, "'[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.'" [Citation.] 'Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient' to establish reckless indifference to human life; 'only knowingly creating a "grave risk of death"' satisfies the statutory requirement. [Citation.] Notably, 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life." (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677.)

"We analyze the totality of the circumstances to determine whether [a defendant] acted with reckless indifference to human life. Relevant factors include: Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony? [Citation.] "'[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient."'" (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677.)

9

The superior court acts as an independent fact finder at a section 1172.6 evidentiary hearing. (See *Gomez v. Superior Court* (2024) 100 Cal.App.5th 778, 787.) "Of course, in a section [1172.6] petition, the trial judge [is not] charged with holding a whole new trial on all the elements of murder. Instead, the parties will focus on evidence made relevant by the amendments to the substantive definition of murder." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)

We review the superior court's decision to deny the petition after an evidentiary hearing for substantial evidence, provided the court understood the elements of the offense and applied the proper standard and burden of proof. (See *People v. Reyes* (2023) 14 Cal.5th 981, 988; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) """In reviewing the sufficiency of the evidence, we must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found [this] element[] of the crime beyond a reasonable doubt.'""" (*People v. Hoyt* (2020) 8 Cal.5th 892, 949-950.)

Substantial evidence supports the finding that Vines acted with reckless indifference to human life. Focusing on the fifth robbery where the murder occurred, Vines was physically present at the crime, and not only did he know that a gun would be used, he wielded one himself, as he had in multiple prior robberies. Two others also had guns. Vines made no effort to minimize the risk of violence during the robbery. Quite the contrary. Even if not every shot fired was directly at the clerk, Vines at a minimum discharged his weapon, which created a grave risk of death. (See *In re Scoggins*, *supra*, 9

10

Cal.5th at p. 677 ["'knowingly creating a "grave risk of death"' satisfies the statutory requirement"]; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1090 ["'we are not aware of a single case that concludes a defendant who personally committed a robbery, used a gun, and was present for the shooting did not meet the standard' of culpability required to support a felony-murder conviction"].)

Additionally, if Vines did not fire at the clerk, then Mansfield did. In three of the four preceding robberies, Manfield variously cocked his gun and held it to a clerk's head, threatened to "blow [another clerk's] head off," and shot at yet another clerk through glass—assuming Vines did not do so. (In the other earlier robbery, the evidence demonstrated that Vines shot at the clerk multiple times, hitting the clerk's finger.) Vines would accordingly have had ample "knowledge of his . . . confederate's propensity for violence or likelihood of using lethal force" (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677), if not demonstrating Vines's own propensity for violence.

Vines's argument to the contrary focuses on his age. He notes that he was 16 at the time of the murder and contends that "the trial court completely failed to consider [his] lack of maturity, the impetuosity of his youth, and the effect peer pressure had on his mental state." Assuming without deciding that these aspects of youth may be considered under the totality of the circumstances (*In re Harper* (2022) 76 Cal.App.5th 450, 470 [doing same]; see *People v. Emanuel* (2025) 17 Cal.5th 867, 885, fn. 6 [declining to decide issue]), the relevant standard on appeal remains a substantial evidence review. Thus, "[e]ven when there is a significant amount of countervailing

11

evidence," "if the record contains reasonable, credible evidence of solid value upon which a reasonable trier of fact *could* have relied in reaching the conclusion in question," then we will uphold the ruling. (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.) The record before us shows that either Vines or an accomplice discharged their weapons during multiple robberies, and that Vines himself discharged his weapon at the robbery where the murder occurred. A reasonable fact finder could have relied on such facts to conclude Vines acted with reckless indifference to human life despite his age at the time. Moreover, Vines argued in trial court that his age suggested he was "being directed and instructed by the more sophisticated and older individuals," so it is reasonable to infer that the trial court considered the characteristics Vines now contends it failed to consider. Rather than not consider them, the trial court simply was not convinced those aspects negated a reckless disregard finding. Vines therefore fails to demonstrate error.

### III.  DISPOSITION

The order affirming Vines's section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

RAMIREZ
P. J.

FIELDS
J.

12